## Annie L. DeKoven *et al.*

*v.*

## John DeKoven Alsop *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 9, 1903.*

1. Corporations—*when an extraordinary dividend is "net income," within meaning of will.* An extraordinary cash dividend, declared after the stockholder's death, consisting of money held during his lifetime in the company's treasury as undivided profits, goes to the widow of the deceased stockholder under a provision of his will giving her the "net income" of the stock.

2. Same—*when stock dividends are part of the corpus of the estate.* A "stock dividend," evidencing a conversion by the corporation into capital of earnings accumulated during the stockholder's lifetime, goes to the remainder-men, as part of the *corpus* of the trust estate, under a will devising the stock in trust, the "net income" to be paid to the testator's widow for life and the residue to be divided among others at her death.

3. Same—*right to subscribe for additional stock is a part of the estate.* Funds derived by trustees from the "right to subscribe" for additional capital stock at par are part of the trust estate in the original stock, held for the remainder-men after paying the "net income" to the life tenant, whether the trustees subscribed for the new stock or sold the right to others.

*Alsop* v. *DeKoven*, 107 Ill. App. 190, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

David Fales, for appellants.

Otis & Graves, (E. A. Otis, of counsel,) for appellees.

Mr. Justice Wilkin delivered the opinion of the court:

This is an appeal from the Appellate Court for the First District in a proceeding in equity begun in the circuit court of Cook county by the trustees of the estate of John DeKoven, deceased, to construe certain provisions of his will, wherein the "rest and residue" of his estate is given to trustees, "to hold, invest, rent, manage

and care for the same, and to pay the net income thereof" to the testator's widow "during her life, so long as she remains unmarried, and upon her death or re-marriage" to divide such residue between the appellees herein, if living at the expiration of the wife's life tenancy.

There is no controversy as to the facts. The testator died April 30, 1898, leaving as a part of his estate a number of shares of the capital stock of several corporations, —railroads, telephone companies, etc. These corporations have since his death declared, in one case an extraordinary cash dividend, in another, stock dividends, and in others, stock dividends and rights to subscribe at par for certain shares of stock. The circuit court held the cash dividends and the stock dividends (including the right to subscribe belonging to each of the said stock dividends) to be a part of the net income of the estate belonging to testator's wife, and that the rights to subscribe to certain other stocks are a part of the capital or *corpus* of said estate, to be held by the trustees as a part thereof. That decree, upon appeal to the Appellate Court for the First District, was reversed by the branch of that court, in part, in a carefully considered opinion by FREEMAN, J. The reasoning and much of the language of that opinion will be adopted here.

The question for determination is whether any or all of these dividends and rights are to be considered "net income," within the meaning of the provision of the will above referred to, payable to the testator's wife as the life tenant, or whether they constitute a part of the capital or body of the estate, which by the will is, upon the expiration of the life tenancy, to be divided between appellees, as remainder-men. These dividends and rights arrange themselves in three classes. The first of these is an extraordinary cash dividend of twenty per cent, declared July 1, 1898, upon the shares of stock in the Pullman Palace Car Company. The dividend amounted to $6000, and it is to be determined whether this is pay-

able, under the will, to testator's wife as "net income," or to the remainder-men as a part of the *corpus* of the estate. The money out of which it was paid appears to have been earned, for the most part, at least, during the lifetime of the deceased, and was retained by the company as surplus assets remaining in the company's treasury as undistributed earnings. While thus in the company's treasury it was subject to such uses as the directors might see fit to make of it for corporation purposes, and its ownership was in the corporation. It had not, therefore, become the property of the testator during his life. In *Gibbons* v. *Mahon*, 136 U. S. 549, the court, by Mr. Justice Gray, says: "The distinction between the title of a corporation and the interest of its members or stockholders in the property of the corporation is familiar and well settled. 'The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interest of each stockholder consists in the right to appropriate part of the profits whenever dividends are declared by the corporation, during its existence, under its charter, and to a like proportion of the property remaining upon the termination or dissolution of the corporation, after payment of its debts." (*Minot* v. *Paine*, 99 Mass. 101; *Greeff* v. *Equitable Life Assurance Society*, 160 N.Y. 19; *Hyatt* v. *Allen*, 56 id. 553.) Applying the principle in the present case, no part of the earnings of the Pullman Palace Car Company out of which the extraordinary cash dividend under consideration was paid had become a part of the testator's estate at the time of his death, no matter when they had been earned by the company. If the dividend had been paid to the testator in his lifetime it would have been received by him as income from his stock investment. It did not become anything else when received by the trustees of his estate in the form of an extra dividend, after his decease. It was still income, like other dividends, and as such it is payable to the life tenant under the provisions of the will.

The second class of so-called dividends consists of the issue of certificates of stock known as "stock dividends." Stock dividends were declared by four of the corporations in which the trust estate was the holder of capital stock. These stock dividends were all substantially of the same character, and in no case was the stockholder allowed an option to take a money dividend instead of stock. These dividends are claimed in behalf of the life tenant as "net income," and in behalf of the remainder-men as a part of the capital to be held in trust for their benefit.

It is urged in behalf of appellees that it was not the meaning and intent of the testator, ascertained, as it must be, from the whole will and all its parts, (*Harrison v. Weatherby*, 180 Ill. 418,) that the net income payable to the life tenant should include future stock dividends. This, however, must depend upon whether such dividends are, or not, "net income" of the trust estate. The life tenant is entitled to all such "net income," no matter in what form it may be received, but not to any portion of the capital. There is a wide and irreconcilable difference of opinion between courts whose opinions are entitled to respect, as to whether stock dividends, so-called, are to be regarded as income to which a life tenant is entitled, or as merely representing capital to be held in trust for the remainder-men. Some of these cases seem, however, to have turned, in a measure, upon the intent of the testator, derived from the language used in creating the trust estate, or from the facts and circumstances of the particular case. This seems to be true of two leading cases in the Court of Appeals of New York, viz., *McLouth v. Hunt*, 154 N. Y. 179, and *Lowry v. Farmers' Loan and Trust Co.* 172 id. 137.

In Cook on Corporations (chap. 33, sec. 553, *et seq.*) it is pointed out that there are "three well defined rules upon this subject, which may be denominated the American or Pennsylvania, the Massachusetts and the English

rule." The first of these is to the effect that when the fund out of which an extraordinary stock or property dividend is to be paid was accumulated by the corporation before the life estate arose it should be held to be principal belonging to the *corpus* of the estate, but if earned after the life estate arose then the dividend should be deemed income, and go to the life tenant. The Massachusetts rule regards all cash dividends, large or small, as income, and stock dividends, whenever earned and however declared, as capital. The English rule, as it was originally stated, treated extraordinary cash or stock or property dividends as belonging to the *corpus* of the trust, but later English decisions are to the effect that extraordinary cash dividends may be decreed to the life tenant. The general subject and the authorities are well considered by the United States Supreme Court in *Gibbons* v. *Mahon, supra,* to which reference may be had. The conclusion reached in that case is, that stock dividends declared, as in the case at bar, go to the remainder-men. This rule is, we think, supported by sound reasoning and sustained upon principle by the greater weight of authority. *Spooner* v. *Phillips,* 62 Conn. 62; *Mills* v. *Britton,* 64 id. 4; *Brown & Larned, Petitioners,* 14 R. I. 371; *Richardson* v. *Richardson,* 75 Me. 574; *Miller* v. *Guerrard,* 67 Ga. 284; *Bouch* v. *Sproule,* L. R. 12 App. Cas. 385.

A dividend is defined as "a corporate profit set aside, declared and ordered by the directors to be paid to the stockholders on demand or at a fixed time. Until the dividend is declared these corporate profits belong to the corporation,—not to the stockholders,—and are liable for corporate indebtedness." (Cook on Corporations, chap. 32, sec. 534.) A stock dividend "is lawful when an amount of money or property equivalent in value to the full par value of the stock distributed as a dividend has been accumulated and is permanently added to the capital stock of the corporation. * * * In this country

these dividends are frequently made, and are constantly sustained by the courts." (Ibid. sec. 536.)

There is a clear distinction between an extraordinary cash dividend, no matter when earned, and stock dividends declared as in the case at bar. The one is a disbursement to the stockholder of accumulated earnings, and the corporation at once parts irrevocably with all interest therein. The other involves no disbursement by the corporation. It parts with nothing to the stockholder. The latter receives, not an actual dividend, but certificates of stock which evidence in a new proportion his interest in the entire capital, including such as by investment of accumulated profits has been added to the original capital. The difference of opinion as to whether this additional issue of stock is to be treated as income for the life tenant or capital to be held in reserve for the remainder-men grows out of the fact that such stock dividends undoubtedly represent additions to the original investment in the corporation. Hence they have been regarded, with what seems to us unsatisfactory reasoning, as income to the stockholder, whereas, in fact, they are not, as we view the matter, "income" to him, but represent additions to the source of his income, viz., his invested capital. The stockholder never receives these additions while the corporation continues its business. They do not go to him in any form, and hence the difficulty we find in regarding them as income to him. A stock dividend gives the stockholder merely the evidences of additions made by the corporation to its own capital. He can, it is true, still retain the old stock certificates and sell the new ones, but by so doing he parts with so much of his interest in the capital of the corporation. The profit he may so derive is of the same nature as he would receive if no earnings had been added to capital and no stock dividend had been declared, but the market value of his stock should have arisen above par by reason of increased earnings and larger cash divi-

dends declared thereon, and he should sell so much of it as represents the rise above its original par value. He would thus diminish his capital, although the earning power of what he has left might afterward equal that of his original investment. It is capital that he parts with. Fluctuations in market values of stock, and in dividends therefrom, constantly occur, regardless of whether the original capital has been increased by addition of accumulated profits or not.

Stock dividends add nothing to the capital of the corporation nor to the capital of the stockholder. They may make it easier for the latter to dispose of a part of his interest. It was the addition made to the plant or capital of the concern out of earnings which increased the value of his shares, and the stock dividends merely represent, in a new form, a part of what the original stock would otherwise represent. Income of a corporation is rarely, if ever, all of it income to the stockholder. Some of the earnings must go out for expenses of operation and for repairs. Without repairs a plant would naturally, in time, wear out and the *corpus* or capital invested cease to earn dividends. What goes into repairs and what goes into permanent improvements or enlargements are alike added to the invested capital to maintain it unimpaired or to increase its power to earn income for the stockholder. The life tenant, as well as the remainder-man, profits by thus maintaining and improving the original investment. It would be as logical to award the life tenant a corresponding interest in the original shares in proportion to whatever earnings or profits are expended for necessary repairs, as to award him or her the portion of such earnings or profits invested in permanent improvements or added to capital. Both repairs and such enlargements of capital come from the same source and are generally made for the same purpose, viz., to maintain or increase the earning capacity of the original investment. It is, as has been said, within the power

of a corporation acting within its charter powers in good faith and with an honest purpose to protect the interests of all concerned, to determine for itself whether its earnings shall be applied to repairs or to betterments or to a fund for use in its business,—and this, regardless of whether its action may diminish, for the time being, the income of a life tenant or increase the estate of a remainder-man. "Profits on hand are valuable to the capital, and a right to share in them passes upon a sale or bequest; but they are the property of the corporation, and may be applied to such uses as it may lawfully make of them." In *Minot* v. *Paine, supra,* the court says (p. 107): "It is obvious that if the directors had made no stock dividends, but had invested the income in permanent improvements, making no increase of the number of shares, the improvements would have been capital belonging to the legatees in remainder."

The question we are considering was discussed fully in the case of *Gibbons* v. *Mahon, supra.* We find no real distinction between the facts in that case and those in the case at bar. It is there said: "A stock dividend really takes nothing from the property of the corporation and adds nothing to the interests of the shareholders. Its property is not diminished and their interests are not increased. After such dividend, as before, the corporation has the title in all the corporate property. The aggregate interests therein of all the shareholders are represented by the whole number of shares, and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones."

It being within the powers of the directors of a corporation, acting, as we have said, in good faith, to determine in what manner accumulated earnings shall be

applied, the nature of the interest of a life tenant and
remainder-man in such accumulated profits may be de-
termined by such action, and, as is further said in the
case last cited, "ordinarily a dividend declared in stock
is to be deemed capital, and a dividend in money is to
be deemed income of each share."

The questions involved have been elaborately argued
by counsel on both sides, and we have carefully consid-
ered the cases cited which do not accept the conclusion
we are compelled to adopt. We need not review them
at length. In *McLouth* v. *Hunt, supra*, the New York Court
of Appeals says: "For all corporate purposes the corpo-
ration may doubtless convert earnings into capital when
such power is conferred by its charter, but when a ques-
tion arises between life tenants and remainder-men con-
cerning the ownership of the earnings thus converted the
action of the corporation will not conclude the courts."
Where, as in the case at bar, the corporation has thus
converted earnings into capital, we know of no principle
which can justify the courts in taking it away from the
remainder-men, to whom the testator has left it by his
will, and giving it to the life tenant, to whom the tes-
tator has left only the net income of such capital.

It is claimed in behalf of appellees herein that un-
der the facts in this case these so-called stock dividends
should still be considered a part of the trust fund for the
benefit of the remainder-men, even though the Pennsyl-
vania rule, above referred to, should be adopted, inas-
much as it is claimed that the earnings upon which the
stock dividends were based had accumulated before the
testator's death. However that may be, we regard the
difficulty in the application of that rule by a trustee as
an obstacle to its application which in many cases would
be insuperable. If, however, the rule should be applied
which is laid down in the case of *Lowry* v. *Farmers' Loan
and Trust Co.* 172 N. Y. 137, where the same dividend of
the Pullman Palace Car Company in controversy here

was under consideration, the result should still be, that under the undisputed facts in the case at bar the stock dividends, so-called, must be regarded as representing a part of the capital belonging to the trust estate, and not as income for the life tenant. In that case the New York court says: "That the value of the shares of stock has been lessened by a dividend is a fact of no relevancy in determining the question of whether the dividend is to be regarded as income to the life tenant or as capital to the remainder-man. That question will be determined by the origin of the dividend. In this case a fund had been created by an accumulation of the net earnings of the corporation, and it remained a part of the general assets until, in the judgment of the directors, the time came when it was proper and prudent to distribute it among the stockholders. That which the directors of the corporation distribute among the stockholders without intrenching upon capital must be comprehended within the term 'profits,' and we should assume that the testator intended that what might be paid in that way should belong to the beneficiary. There is no question of increasing the capital for any corporate purpose or need. It was simply a mode of distributing the profits earned by the employment of capital."

While we are compelled to differ from the views expressed in the *Lowry case* for reasons we have before indicated, yet if we should agree with the above quotation the result would still be that the stock dividend referred to therein must, in the case at bar, be regarded, not as an actual dividend, but merely as a distribution of evidences of capital which was already accumulated by the corporation in the lifetime of the deceased and was represented by the shares outstanding in his name at the time of his death. In other words, it formed a part of the *corpus* of his estate, the income of which, only, was left to the life tenant. To give to the life tenant in the case at bar these stock dividends would be to

reduce by so much the value of the original *corpus* of the estate devised to the remainder-men and would intrench upon the capital. We conclude that the court must treat as capital that which by the action of the corporations referred to has in fact become such, and that the stock dividends under consideration belong to the *corpus* of the trust estate.

The third of the sources from which the trustees of the estate have derived funds with reference to which they ask the instructions of the court, is certain rights and privileges of subscribing to the stock of five of the corporations in which said trust estate is interested. By reason of their holding shares of the capital stock of such corporations the said trustees were given rights to subscribe at par for a certain amount of the new stock to be issued by each of said corporations, respectively, proportioned to the number of shares before held by the estate. Inasmuch as such new stock, when issued, had a market value greater than par, these rights to subscribe were salable at a premium. Some of them were accordingly sold by the trustees in the exercise of the discretion vested in them, and they received therefor sums aggregating several thousand dollars. In the remaining two corporations the trustees availed themselves of the rights and did subscribe for such additional stock, paying therefor out of funds belonging to the estate. Such rights to subscribe have been generally held to be incident to the ownership of the stock, and, therefore, capital to be added to the trust fund held for the remainder-men, the income of which goes to the life tenant. This is said to be "equally true whether the trustee subscribes for the new stock for the benefit of the trust or sells the right to subscribe for a valuable consideration. In either event the income goes to the *corpus*." (Cook on Corporations, chap. 33, sec. 559; *Atkins* v. *Alfree*, 94 Mass. 359; *Biddle's Appeal*, 99 Pa. St. 278; *Eidman* v. *Bowman*, 58 Ill. 444.) In the last case cited it is said (p. 447); "When

the company determines to increase their capital stock within the limits of their charter, each of the previous shareholders has the right to a proportionate number of the new shares or a proportionate amount of the new stock if it should be added to the old shares." We agree with the circuit court that these rights to subscribe, and the proceeds of their sale, belong to the trust fund. We do not regard the case of *Waterman* v. *Alden,* 42 Ill. App. 294, as holding the contrary. In that case it is said in the opinion of the Appellate Court (concurred in by this court on that question, 144 Ill. 90,) that a surplus equal to the amount of new stock had been earned at the testator's death. The new stock was not issued as a stock dividend which stockholders were to take in that form, but these parties, as original stockholders, were permitted to subscribe for the new shares of stock to the amount of their interest in the accumulated earnings in lieu of a cash payment of that amount, so that they could take either stock or cash, at their election. There was, therefore, neither a stock dividend declared, nor was there given a mere right to subscribe for the new stock. In effect, the stockholders received a cash dividend, which they could invest in the new stock or not, as they chose.

For the reasons stated, the Appellate Court held as erroneous that part of the decree of the circuit court which finds the stock dividends of the Pullman Palace Car Company, the Pullman Loan and Savings Bank, the Chicago Telephone Company and the Chicago, Rock Island and Pacific Railway Company to be part of the net income of the estate. The case seems to have received, throughout, a most careful consideration by the Appellate Court, and its views and conclusions are fully sustained by the authorities cited in its opinion, and we fully concur in the same. Its judgment will accordingly be affirmed.                *Judgment affirmed.*