JOHN A. KALBACH, Adm'r and Trustee of the Estate of Emiline A. Clark, deceased, et al., Appellants, v. GEORGE P. CLARK, ET AL., Appellants.

**Life estates:** STOCK DIVIDENDS: INTEREST OF LIFE TENANT. A devise of the life use of corporate stock passes to the life tenant all dividends which represent profits on the original stock, whether in cash, stock, or other property; if however, a stock dividend represents nothing but the natural increase in the value of the original stock, so that there is merely a change in the form of ownership, such stock passes to the remaindermen.

**Same:** BURDEN OF PROOF. Stock dividends presumptively represent profits and the burden is on him who claims otherwise to show that the same is a part of the capital.

**Wills:** CONSTRUCTION: BENEFICIARIES. Wills should not be given a technical construction unless it is apparent the words were used in a technical sense, and where a testatrix during the lifetime of her children gave to one a life estate in personal property the remainder to be " equally divided among the heirs " of such children, the word " heirs " is held to be the equivalent of children and to pass the property to the then grandchildren although one of testatrix' children was still living.

**Same:** PER CAPITA DISTRIBUTION. Where a will provides for an equal division of property, subject to a life estate, among the heirs of certain children, the remainder is to be divided per capita and not per stirpes.

*Appeal from Mahaska District Court.*— HON. B. W. PRESTON, Judge.

THURSDAY, FEBRUARY 7, 1907.

THIS is a suit for the construction of the will of Emiline A. Clark, deceased. The trial court found that the heirs of Mary C. Wolcott, who was one of the legatees in the will, took each one-seventh of her estate, not including five shares of stock issued by a corporation as dividends; that the children of George P. Clark took the interest devised to said George P.; and that the widows of John A. Clark and Edgar B. Clark, both deceased, took nothing of the estate of Emiline A. Clark. All parties in interest appeal.— *Affirmed.*

*Gleason & Preston,* for John A. Kalbach and Peter C. and Lucien F. Wolcott.

*H. W. Gleason,* guardian *ad litem,* for Mary P. Wolcott. *J. F. & W. R.·Lacey,* for W. R. L. Lacey, guardian *ad litem,* for Emiline A. Clark a minor, and Emelyn Clark. *Irving C. Johnson,* for Edgar A., Ella M., and Gertrude S. Clark.

DEEMER, J.— The material parts of the will under consideration are as follows:

It is my wish that my daughter Mary C. Wolcott have the use of my stock in the Sanborn Map Publishing Company in consideration of the kind care she has taken of me during my sickness, which has been long and severe. I do not wish her to part with it, but to keep the dividends for her own personal use, after she has paid Dr. Perrine all expenses connected with my own sickness and death and also my husband's funeral expenses.

At her death I wish the principal to be equally divided among the heirs of my four children, George P., John A., and Edgar B. Clark, and Mary C. Wolcott.

This will was executed December 23, 1882, and testatrix Emiline A. Clark died February 12, 1883. The will was not probated, however, until October 15, 1897. Mary C. Wolcott and Geo. P., John A., and Edgar B. Clark were all alive when testatrix died, but since that all have died, save

George P. Clark, who is now alive. Defendant Geo. P. Clark has two children, Ella M. and Gertrude L. Clark. John A. Clark left a widow, name unknown, and one minor child, Evaline A. Clark. Edgar B. Clark left one child, Edgar A. Clark, and Mary. C. Wolcott left surviving Lucian F., Peter C., and Mary P. Wolcott, her children. At the time of the death of Emiline A. Clark, she held ten shares of stock in the Sanborn-Peters Map Company, a corporation, which went into the hands of her daughter, Mary C. Wolcott, one of the legatees under the will. Mary C. Wolcott received all cash dividends declared on this stock down to the time of her death. After the appointment of plaintiff as administrator he collected and paid to Mrs. Wolcott all cash dividends received by him. Some time in the year of 1901 or 1902 the corporation changed its name to the Sanborn Map Company, and shares of stock were issued by the new corporation in exchange for shares in the old, and thereafter and in the year 1902 five additional shares of stock were issued by the new corporation to plaintiff as administrator, as a stock dividend declared by it. It is claimed, and, as we think, the evidence shows, that this stock dividend was declared out of the accumulations after the death of Emiline A. Clark. At the time of the organization of the new corporation the capital stock was increased from $200,000 to $400,000, and each shareholder in the old company received the same number of shares from the new that he held in the old, but they were for $100 each, instead of $50. In 1903 the stock was increased from $400,000 to $600,000, and each shareholder was given new shares of stock to the amount of 50 per cent. of his then holdings. The 50 per cent. increase or stock dividend was issued to plaintiff as administrator or trustee. The reason given for this dividend was that the value of the company's property had so increased as to justify it. We quote now from the testimony as to how this stock dividend came to be issued: " The resolution provided that the capital stock should be increased. The company having

property of sufficient value — that is, of more value than the amount of capital stock as increased — the directors saw fit to distribute, on certain of the occasions I have described, to the stockholders, as represented by the increased value of the property and plant, and not required therefore to be subscribed for further in cash."

The questions presented by the record are these: First. Is Mary C. Wolcott entitled to the stock dividend of the five shares of stock issued before her death? Second. Are the children of Geo. P. Clark entitled to anything, he being alive at the time of the death of Mary C. Wolcott? Third. Do the children of Mary C. Wolcott, and of Edgar B., John A. Clark, and of George P. Clark, if they are entitled to anything, take per capita or per stirpes under the terms of the will?

Reduced to its final analysis, the first question is this: Does a stock dividend pass to a legatee of a life estate in the original shares of stock, or are they part of the estate which passes directly to the remainderman? This question has been variously answered by the different courts of the country, and we have never before had occasion to consider it. Three rules seem to have been established by the decisions of the other courts — one known as the American or Pennsylvania rule, another the Massachusetts or the rule in Minot's case, and the third the English rule. Under the so-called " American rule " the courts inquire as to when the stock dividends were earned. If before the life estate arose, it is treated as belonging to the corpus of the estate, and does not go to the life tenant; but, if the fund out of which it was paid was earned or accrued after the life tenancy arose, then the stock dividend goes to the life tenant. *Earp's Appeal,* 28 Pa. 368; *Biddle's Appeal,* 99 Pa. 278; *Philadelphia Co.'s Appeal* (Pa.) 16 Atl. 734; *Spooner v. Phillips,* 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461); *Hite v. Hite,* 93 Ky. 257 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189); *Gilkey v.*

1. LIFE ESTATES: stock dividends: interest of life tenant.

*Paine,* 80 Me. 319 (14 Atl. 205); *Lord v. Brooks,* 52 N.
H. 72; *Van Doren v. Olden,* 19 N. J. Eq. 176 (97 Am.
Dec. 650); *Riggs v. Cragg,* 89 N. Y. 479; *Hyatt v. Allen,*
56 N. Y. 553 (15 Am. Rep. 449); *Cobb v. Fant,* 36 S. C.
1 (14 S. E. 959). See 26 American Law Review (Feb.,
1892) 1, and *Moss' Appeal,* 83 Pa. St. 264 (24 Am. Rep.
169). Under the Massachusetts rule, stock dividends, no
matter when -earned or however declared, are treated as
capital and go to the remainderman. Cash dividends, how-
ever, go to the life tenant. *Minot v. Paine,* 99 Mass. 101
(96 Am. Dec. 705); *Daland v. Williams,* 101 Mass. 571;
*Gibbons v. Mahon,* 136 U. S. 549 (10 Sup. Ct. 1057, 34 L.
Ed. 525). There have been some modifications of this rule,
however, in Massachusetts. See. *Heard v. Eldredge,* 109
Mass. 258 (12 Am. Rep. 687); *Leland v. Hayden,* 102 Mass.
542; *Davis v. Jackson,* 152 Mass. 58 (25 N. E. 21, 23 Am.
St. Rep. 801); *Millen v. Guerrard,* 67 Ga. 284 (44 Am.
Rep. 720); *Parker v. Mason,* 8 R. I. 427; *Greene v. Smith,*
17 R. I. 28 (19 Atl. 1081). See, also, 5 American Law
Review, 720; Perry on Trusts (3d Ed.) sections 544, 545.
Under the English rule, ordinary cash or stock dividends go
to the life tenant, while extraordinary dividends are treated
as belonging to the corpus and go to the remainderman.
*Witt v. Steere,* 13 Vesey, 363; *Bates v. McKinley,* 31 Beav.
280; *In re Barton Trust* (L. R.), 5 Eq. 238. The rule has
not, however, been adhered to in all cases in England. See ·
*Gugden v. Alsbury,* 63 L. T. R. 576; *Ellis v. Barfield,* 64 L.
T. R. 625; *In re Bouch* (L. R.), 29 Chap. Div. 635.

With such divergence of opinion, it is manifest that
cogent reasons may be given in support of either of these
propositions. We shall not attempt to review the cases cited
in support of the different rules. He who cares to know
the logic thereof may read. Our duty is performed when we
establish a rule for this State which we believe best sus-
tained on principle and by authority. That .rule more
nearly approximates what is called the American than any

other. Under it we start with the notion that all pure dividends, whether in cash or stock or other property, are a part of the income, and, when declared, should go to the life tenant, and not to the remainderman, as it is not a part of the corpus of the property, but a part of the income derived from the use and management thereof. Any dividends, so-called, presumptively belong to the life tenant, as they are, in the absence of a showing to the contrary, assumed to have been divided as profits. If, however, the so-called stock dividends represent the corporate capital — that is, represent nothing but the natural growth or increase in the value of the permanent property, so that there is merely a change in the form of ownership — such stock should go to the remainderman; for in such cases the dividend is a dividend of capital, representing simply an increase in the value of the physical property, good will, or other thing of tangible value. This is the modified American rule announced in *Spooner v. Phillips,* 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461); *Hite's Devisees v. Hite's Ex'r,* 93 Ky. 257 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189); *Williams v. Tel. Co.,* 93 N. Y. 162; *Lord v. Brooks,* 52 N. H. 72; *Moss' Appeal,* 83 Pa. 264 (24 Am. Rep. 164); Thompson on Corp. sections 2192, 2193. Under this rule it becomes a question of fact as to the actual nature of the dividend. The mere fact that the directors of the corporation call it either one thing or the other is not controlling. The Massachusetts rule has also been adopted by the Supreme Court of the United States, but has been most severely criticised, and the court which first announced it has departed somewhat from the hard and fast principle just announced. Originally the courts of that State held that the form of action taken by the corporation was conclusive; that is to say, if the stock was issued as a capital dividend, this was an end of the inquiry. But this loses sight of the real inquiry as to what is income which should go to the life tenant. As we have said, however, the Massachusetts court

has receded somewhat from that position. *Heard v. Eldredge,* 109 Mass. 258 (12 Am. Rep. 687) ; *Davis v. Jackson,* 152 Mass. 58 (25 N. E. 21, 23 Am. St. Rep. 801). The Georgia decision heretofore cited seems to be based upon a statute of that State. See Code Ga. 1873, section 2256; Millen v. Guerrard, *supra.*

Under the rules we have announced, we start out with the assumption that these stock dividends represent income, and cast the burden upon him who claims they were of capi-

2. SAME: burden of proof. tal, and simply represent the property of the corporation of showing that fact. Going back, now, to the record, we find that in 1903 the capital of the company was increased from $400,000 to $600,000, and that the increase was distributed to the stockholders. This increase represented the enhanced value of the company's property, due to gradual enhancement of its value. Cash dividends from earnings were declared from time to time, but the stock dividends of 1903 represented, not the net earnings of the company or its surplus, but the increased value of the property and the plant. As we have already observed, this is simply a dividend of capital; in other words, an increase in the number of shares of stock, but not an increase in the aggregate of the value of the shares. As the stock dividend in the instant case did not represent earnings or income, but merely a change in form of the ownership of the corporate capital, the shares should go to the remainderman, and not to the life tenant. Much more might be said in support of this rule, but enough has been stated to indicate that the view taken is the equitable, just, and reasonable one, and we forbear further discussion.

II. The next question is, who shall take under the bequest to " the heirs of my four children, Geo. P., John A., and Edgar B. Clark, and Mary C. Wolcott? On the one

3. WILLS: construction: beneficiaries. hand, it is contended that as Geo. P. Clark is not dead, and, technically speaking, has no heirs, the provision of the will as to his heirs cannot be

carried out, and is void, under the old maxim, *" Nemo est hæres viventis."* It is true, of course, that no one can have heirs while living, and that it cannot be determined who his heirs may be until his death. But wills are not, as a rule, to have a technical construction, unless it appears that the testator used the words employed by him in a technical sense. In the case before us all of testator's children were living when this will was made, and the bequest was not to them, but to their heirs. Testatrix evidently used the words " the heirs of the four children " as the equivalent of " children," for she directed that distribution be made among them upon the death of the life tenant. The words are not used to denote succession, but to describe the legatees who were to take under the will, and they should not be given their strict legal meaning, for this was evidently not the testator's intention. *Furenes v. Severtson,* 102 Iowa, 322; *Flynn v. Holman,* 119 Iowa, 739; *Turman v. White's Heirs,* 14 B. Mon. (Ky.) 560; *Heard v. Horton,* 1 Denio, 165 (43 Am. Dec. 659); *Bowers v. Porter,* 4 Pick. (Mass.) 198; *Shepherd v. Nabors,* 6 Ala. 631.

Many reasons might be given for this conclusion, but it is enough to say that the law favors the early vesting of estates; that wills be so construed, if possible, as to render all the provisions thereof legal and valid; and that such instruments will be so construed, if possible, as to prevent even partial intestacy. *Blackman v. Wadsworth,* 65 Iowa, 80, is not in point, as an examination will disclose. Our conclusion on this branch of the case finds support in the following additional authorities: *Dawson v. Schaefer,* 52 N. J. Ch. 341 (30 Atl. 91); *In re Scott's Estate,* 163 Pa. St. 165 (29 Atl. 877); *Underwood v. Robbins,* 117 Ind. 308 (20 N. E. 230); *Durfee v. MacNeil,* 58 Ohio, 238 (50 N. E. 721); *Appeal of Lockwood,* 55 Conn. 157 (10 Atl. 517); *Feltman v. Butts,* 8 Bush (Ky.) 115. The husbands or wives of testator's children are neither children nor heirs, and therefore take nothing under the will. *Morris v. Bolles,*

65 Conn. 45 (31 Atl. 538) ; *Platt v. Mickle,* 137 N. Y. 106
(32 N. E. 1070). It will be observed that the devise is of
personal property, and that, strictly speaking, there are no
heirs of such an estate. Those who take personalty by in-
heritance are technically "next of kin," and not heirs. *Till-*
*man v. Davis,* 95 N. Y. 17 (47 Am. Rep. 1). So that
it is apparent that testatrix did not use the word "heirs"
in its strictly technical sense. We are clearly of the opin-
ion that the trial court was right in holding that the re-
mainder passed to the children of the four children named
in the will in being at the termination of the life estate;
for it was then that the principal estate was to be divided.
*Wilhelm v. Calder,* 102 Iowa, 342.

III. How should the estate be divided as between the
children of the persons named in the will — per stirpes, or
per capita? This, like the propositions heretofore discussed,
4. SAME: per-       is a perplexing question, upon which the ad-
capita dis-
tribution.          judicated cases are not in harmony. In such
cases the safe and true rule is to find the intent of the
testator, if that can be ascertained. The provision of the
will in question is, " At her decease [Mary C. Wolcott] I
wish the principal to be equally divided among the heirs of
my four children," naming testatrix's four children. As we
construe the will, this provides for an equal distribution
among the children of the four children living at the time
of the death of the holder of the life estate. The gift is
direct and immediate to individuals, and the words used are
descriptive of those who were to take, and the will provides
for an equal division among them — not for an equal di-
vision among the four children and then a division of each
fourth among the children of that child. The objects of
the gift take as individuals, and not by representation. It
will be noticed that testatrix provides for an equal distribu-
tion among the heirs of the children. Primarily this means
a per capita distribution. Equally among persons of the
same relative class means, of course, a per capita distribu-

tion. *Kling v. Schnellbecker,* 107 Iowa, 636; *Records v. Fields,* 155 Mo. 314 (55 S. W. 1021); *Johnson v. Bodine,* 108 Iowa, 594; *Knutson v. Vidders,* 126 Iowa, 511; *McFatridge v. Holtzclaw,* 94 Ky. 352 (22 S. W. 439); *In re Verplanck,* 91 N. Y. 439; *McIntire v. McIntire,* 192 U. S. 116 (24 Sup. Ct. 196, 48 L. Ed. 369); *Hill v. Bowers,* 120 Mass. 135; *Benedict v. Ball,* 38 N. J. Eq. 48; *Hughes v. Hughes,* 26 Ky. L. 625 (82 S. W. 408); *Collins v. Feather's Ex'rs,* 52 W. Va. 107 (43 S. E. 323, 61 L. R. A. 660). Many cases are cited to show that these so-called heirs should take per stirpes, and not per capita; but in many of them the provisions of the will differed from those in the will now before us, and in others principles are announced which have been overruled by the courts pronouncing them, and in others the rules announced do not meet with our approval.

Our conclusions upon the entire case are that Mary Wolcott or her heirs are not entitled to the so-called stock dividends; that the gift of the remainder was to the children of the persons named in the will in being at the time of the death of Mary C. Wolcott; that these children took per capita, and not per stirpes; and that the surviving husband and wives of the named children took nothing under the will. The order and decree of the district court so provides, and the appeals are without merit. The costs of the appeal will be equally divided between the children of Mary C. Wolcott, deceased, and of Edgar A. and Evaline Clark.

The decree is *affirmed.*