Simmons, Chief Justice.
In June, 1869, The Central Railroad & Banking Company of Georgia leased the property of The Southwestern Railroad Company for and during the entire corporate existence of -the latter company under its charter. The lease-was to go into effect on the 1st day of December, 1869, and thereafter The Central R. R. & B. Co. was to exercise all rights, privileges and control which The Southwestern R. R. Co. previously had, and also to receive and dispose of all the earnings of The Southwestern R. R. Co., and to merge 'the same with the earnings of The Central R. R. & Bkg. Co., and to decide what dividends should he declared therefrom. “And the said The Central Railroad and Banking Company of Georgia hereby conveníante and agrees to and with the said The Southwestern Railroad Company, that during-the months of June and December in every year during the continuance of the term hereby granted, it will declare and pay to the stockholders of the said The Southwestern Railroad Company dividends which shall bear to the dividends declared and paid to its oiwn stockholders the ratio of eight-to ten. That is to- say, eight dollars to each share of Southwestern Railroad stock for every ten dollars declared and paid to each share of its own stock; and that no semi-annual dividend so- declared and paid to the stockholders of the Southwestern Railroad Company shall be less than at the rate of seven per -centum per annum, -on -the par value of their Stock; -and that whenever any stock dividend <or division of assets or accumulations shall be declared, paid or made to 'the stockholders of the said The Central Railroad and Banking Company of Georgia, a similar dividend or distribution shall be paid and made to the stockholders of the Southwestern-Railroad in the same proportion of eight to ten; and that all such dividends and distributions of every sort shall be paid to the stockholders of The Southwestern Railroad Company at M-acon and Savannah, as the company has heretofore paid its dividends, and free of all taxes to the stockholders.” In *481 1882 Robert Mclntire, of the county of Chatham, owned two hundred shares of the stock of The Southwestern Railroad Company. In August of that year he made a deed of' trust wherein he disposed of these two hundred shares, one hundred shares to the Trustees of Trinity Church for the' Methodist Episcopal Church South in Savannah, and one hundred shares to the Trustees of Wesley Monumental Church for the Methodist Episcopal Church South iu Savannah. In the deed thus made he reserved to himself the' right to hold the two hundred shares and collect the dividends and profits arising therefrom for and during his natural life, which dividends and profits during his life were to belong to him individually. The trustees of the two-churches were to receive no dividends or profits until after his death.
The record discloses that on the 1st of December, 1869,. The Central Railroad and Banking Company took possession of all the property and assets of The Southwestern Railroad Company, and that from that time until June, 1892, it paid to the stockholders of the Southwestern Railroad semiannual dividends of seven per cent, per annum on the par value of their stock, the dividends being paid directly to the stockholders. In 1892 The Central Railroad & Banking Co., becoming financially embarrassed, wtas placed in the hands of a receiver by order of the Circuit Court of the United States for the Southern District of Georgia, and so remained until it was sold by decree of the same court on October 7, 1895. Up to the day of sale of the Central, the receiver operated the Southwestern Railroad under .the lease. The purchasers «at the sale obtained a new charter under the name of the Central of Georgia Railway Company, and on October 17, 1895, another lease contract was made between the new company and The Southwestern Railroad Company, upon certain terms and conditions therein specified but unnecessary here to mention. In making the new lease there seems to have been a compromise m'ade between the new *482 company and The Southwestern Railroad Company as to the dividends which had accrued from June, 1892, to the date of the sale of the road. The Central of Georgia Railway Co. agreed to pay the stockholders of The Southwestern Railroad Co. a five per cent, dividend instead of the seven per cent, which had been agreed upon in the original loase. Payment of this five per cent, was made to the president and directors of The Southwestern Railroad Company, In December, 1895, the directors of The Southwestern R. Co. declared what they called a dividend to their stockholders. Before this dividend was declared, to wit on October 1, 1895, Mclntire died and his successors in the trust ■received the dividends on the two hundred shares of stock which he had given in trust to the two churches. This money they were about to pay to the trustees of the churches, when the executors of Mclntire gave them notice not to do so, as they would claim all the dividends up to the death of Mclntire. Mclntire’s successors in the trust then filed their bill of interpleader, setting up therein that the executors of Mclntire claimed these dividends as belonging to his individual estate and that the trustees of the two churches claimed that they belonged to them; and asking direction of the court. The case was submitted to the court upon an agreed statement of facts, without the intervention of a jury, and the money was awarded to the trustees of the churches and tíre court costs taxed against the executors. The executors excepted to- this judgment and bring it here for review. The lower court also decreed that the trustees of the churches should pay $100 out of the fund to the counsel filing the bill of interpleader. To 'this the trustees of the churches excepted.
1. It was contended by counsel for plaintiffs in error here, that the money paid to The Southwestern Railroad Company by the purchasers of The Central Railroad & Banking Company was not paid as dividends but as rent for the use and occupation of the Southwestern Railroad: that, *483 being rent and not dividends, it was apportionable, and the «estate of Melntire was entitled to all that part which had accrued up to «the time of his death and the trustees of the -churches were entitled to that which accrued after the- death of Melntire. On the other hand it was contended by the counsel for the defendants in error, that the money was paid as dividends, that dividends belong to the person owning the stock at the time they are declared, and that as Mc-Intire died before the dividends were declared and the trustees thereby became- owners of the stock and held the same iu December, 1895, when the dividends were declared, they, .and not the executors, were entitled to the money.
The view we take of the case renders it unnecessary for us •to determine whether either proposition is trae under the facts of this case. I am inclined to -think that rent is ap■portionable between the -estate of the life-tenant -and -the remainderman; and it is undoubtedly true that the owner of •.stock in a corporation is entitled to the dividends declared while he is owner. In this case neither proposition applies. In 1869 the lessor corporation leased all of its property to the lessee corporation, and the latter in that contract of lease .■stipulated and agreed to pay to the stockholders of the lessor at least seven per cent, per annum on the par value of their ■stock. They did not contract to p'ay it to the lessor company but to its stockholders directly. The lessor, The Southwest■ern Railroad Go., in this contract of lease waived its right to declare or to collect dividends, and contracted with the lessee to pay them directly to the stockholders of the lessor. 'The lessee agreed with the lessor that when it paid its own stockholders ten per cent, on their stock it would pay the ¡stockholders of the lessor eight per cent., and that whether it paid its own stockholders anything or not it would in any event pay the stockholders of the lessor at least seven per •cent, per annum on the par value of their shares. Here then was a contract, made not so much fox the benefit of the lessor «corporation as for the benefit of its stockholders, in which it *484 was stipulated that these stockholders should at all times- and under all circumstances during the existence of the-charter life of the lessor corporation receive from the lessee at least seven per cent, per annum on the par value of their • stock. It did not stipulate that if it earned that amount, from the operation of its own road or the operation of the-leased road it would then declare a dividend of the earnings, but it contracted in advance that this dividend should he-paid at all events. When the contract of the lease of 1869-was executed and delivered, the dividends were in effect declared to- the extent of at least seven dollars per annum; on each one hundred dollars worth of stock. They were-to he paid to the individual stockholders in the months of' June and December of-each year, and were therefore at' these times due and payable, and Mclntire, the donor, was • then entitled to- them. If The- Central Railroad & Banking • Co. had not become embarrassed and had not been placed in the hands of a receiver, I am inclined to think that Mclntire could have sued for and recovered the dividends due-on the days mentioned. Under the contract of lease he had a vested right in them. They were his property and he was • entitled to- receive them, inasmuch as he owned the stock at the time they became due. The rule being that dividends belong to the o-wner of the- stock at the time they are declared and made payable, and these dividends having been declared in advance by contract, they certainly belong toMclntire in so- far as they were made payable up to the time-of his death. Being part of his personal estate, his executors are entitled to recover them.
The fact that the directors of The Southwestern R. R. Company compromised-the claims of these stockholders, received the money and declared the dividend, does not contravene this right of the executors to the portion of the dividends payable before the death of Mclntire. The directors acted in the matter simply as the agents or trustees of the various stockholders. Under the contract of lease there was *485 no money due and owing the lessor corporation; for, as we have seen, it was due and payable to the individual stockholders. It did not arise from the earnings of the leased road but from the contract of lease, and the declaration of the board of directors that it was a dividend declared at •that time did not in legal effect make it so, and such declara-tion could not give the right to such dividends to persons .holding stock at that time. The action of the board of directors amounted to no more than a statement that they, as .agents or trustees of the individual stockholders, had made .a compromise with the purchasers of The Central Railroad .& Banking Company, by which they had received a certain proportion of the past due dividends which were declared tinder the lease contract, and were ready to pay it out to the ¡stockholders who^ were entitled to it. It was merely an announcement of their action as the agents of the stockholders, .and not such a declaration as would fix the legal rights of the .stockholders or deprive them of any legal rights they had under the contract of lease. Bor these reasons we think that the trial judge erred in awarding the fund to the trustees of :the two churches.
2. The trial judge provided for the costs and expenses by -•■decreeing that the executors of Mclntire pay the court costs ■and that the trustees of the churches pay the counsel filing 'the bill of interpleader, out of the fund, fees for their ser■vices. The executors excepted to the decree requiring them to pay the costs of the litigation, and the trustees by cross-bill excepted to the decree requiring them to pay out of the fund fees of counsel filing the bill of interpleader. As we have decided that the decree awarding the fund to the trustees of the churches was erroneous, it follows as a matter of • course that the decree requiring them to pay fees out of this fund is likewise error. Whether counsel who file a bill of interpleader are entitled to fees out of the fund in the hands -of the person who files the bill or whether that person must pay his own counsel we do not now decide, hut leave this *486 matter to be passed upon, in the light of this decision, by the learned judge below. In the same light the decree as. to court costs should be likewise reconsidered.

Judgment reversed.

All the Justices concurring.