MANN, executrix, *v.* ANDERSON *et al.*

Where by the terms of a will certain shares of stock in a corporation are bequeathed to one for life with remainder over to others, and the life-tenant dies between dividend days, the dividend declared by the corporation next after his death, unless the intention of the testator be clearly otherwise, is not apportionable between his estate and the remaindermen, but, under such circumstances, the entire dividend belongs to those who own the stock at the time it is declared.

Argued February 8, — Decided March 16, 1899.

Motion to distribute money.   Before Judge Falligant.   Chatham superior court.   July 12, 1898.

Mrs. Mann as executrix of W. G. Mann filed her motion, praying that two thirds of certain dividends, arising from

stock which had come under the administration of the court in a proceeding for direction, be turned over to her as the representative of the life-tenant of the stock; the other parties to the motion being or representing the remaindermen of the trust estate of which W. G. Mann was the life-tenant. He died on November 20, 1896. The trust estate had been fully distributed, with the exception of $512.88 cash, made up of semi-annual dividends of three and a half per cent. on 349 shares of stock of the Savannah Gas Light Co., and of two and a half per cent. on 83 shares of stock of the Southwestern Railroad Co.; each of which dividends was declared on January 1, 1897, from the earnings of those companies for the six months previous. On April 1, 1885, the Savannah Gas Light Co. had leased all its property to the Mutual Gas Light Co., for twenty years, at a yearly rental of $10,000 for the first four years, $20,000 for the second four, and $24,000 for the last twelve, payable quarterly. The capital stock of the lessor company is $400,000, and the par value of its shares $25. Said semi-annual dividend is based partly upon the rent received under said lease, and partly upon the income from a surplus fund. The dividend varies, and is payable only when declared by the directors. The business of furnishing gas is carried on, not by the Savannah Gas Light Company, but by its lessee. On October 17, 1895, the Southwestern Railroad Co. had leased its railroad and appurtenances to the Central of Georgia Railway Co., for 101 years, the lease covenanting that the lessee should pay to the lessor five per cent. upon the amount of the capital stock of the lessor then outstanding, payments to be made semi-annually on the first of January and July. The dividend is payable only when declared by the directors of the Southwestern Railroad Company. It was further stipulated in the railroad lease, that the lessee company should pay in addition an amount to pay the salaries of the president and of the secretary and treasurer of the lessor during the continuance of the lease, not to exceed $2,500 in any one year, and should further pay for all necessary stock, account, and transfer books, stationery, and offices for said officers, and all necessary expenses connected with the ⌐ the stock of the lessor, the

advertisement and payment of its dividends, and the meetings of its board of directors and stockholders; and that the lessee should pay the current expenses incident to the working and management of the railroad, all debts and claims against the lessor which might be created by any action of the lessee, all taxes, damages to persons and property, and all claims arising from anything done while being operated under the lease, and should deliver up the railroad in the same good order and condition as when received. The gas-light lease stipulates that the lessee will keep the property in repair, and at the expiration of the lease will deliver it up in the same good order and condition as when leased. For the other facts see the opinion.

*Charlton, Mackall & Anderson,* for plaintiff in error.

*Lawton & Cunningham, Denmark, Adams & Freeman* and *Mercer & Mercer,* contra.

FISH, J. William Grayson Mann was the life-tenant and the defendants are the remaindermen of a certain trust estate created by the will of George B. Cumming. A part of the property of this trust estate consisted of shares of stock in the Southwestern Railroad Co., and shares of stock in the Savannah Gas Light Co. Mann, the life-tenant, died on Nov. 20, 1896, and each of these corporations declared a semi-annual dividend on Jan. 1, 1897, from its earnings for the previous six months. A contest with reference to these dividends arose between the executrix of the life-tenant and the remaindermen, the executrix claiming that these dividends should be apportioned between her and the remaindermen, two thirds to her and one third to them; the remaindermen claiming that the whole of the dividends should be distributed among them, according to their respective interests. The court below awarded the entire fund arising from these dividends to the remaindermen, and the executrix excepted. Where the owner of a life-estate in shares of stock in a corporation dies between dividend days, the general rule is that the dividend declared next after his death is not apportionable, but belongs entirely to the corpus of the trust fund, and so goes to the remainderman or the reversioner. 1 Cook on Stock & Stockholders, § 558; Perry on Trusts, § 556.

Counsel for the executrix of the life-tenant admit that this principle "seems to be sound in regard to dividends declared by going concerns, which are subject to the vicissitudes and risks of business, and may not know until the time of declaring a dividend whether their financial condition will warrant such action," but contend that "it does not seem sound under the peculiar circumstances of this case." Without undertaking to restate "the peculiar circumstances of this case," which will be seen in the reporter's statement, let us, for the sake of the argument, take it for granted that the fund available to each of these corporations from which to declare and pay a dividend to its stockholders never varies from one dividend day to another; would the fact that the amount of such fund is not "subject to the vicissitudes and risks of business" render a dividend declared by the corporation next after the death of one who held a life-estate in shares of its stock apportionable between his executor and the remaindermen? We think not. The general rule at common law was, that fixed periodical payments were not apportionable, and it therefore required positive parliamentary enactments to make them so in England. See 11 Geo. II. c. 19; 4 and 5 Will. IV. c. 22, and 33 and 34 Vict. c. 35. Nothing in the way of income could be more fixed as to amount, or more certain of realization, than the income to be derived from money invested in the public funds of Great Britain, and yet at common law it was not apportionable (Wilson v. Harman, Amb. 279; Perley v. Smith, 3 Atk. 260; Sherrard v. Sherrard, Ib. 503); nor were rents, annuities, pensions, etc. 2 Wms. Exrs. *728, *729. It was not until the passage of the act of 11 Geo. II., that rent of any kind was apportionable in England. This act created apportionments in a very limited class of cases, and the later statutes above cited were each passed for the purpose of giving the apportionment principle a wider range, so that it might include income which was not embraced in it at common law or under any prior enactment. It is evident, therefore, that the fact that income might be periodically due and absolutely fixed as to amount did not render it apportionable. The common-law principle is, that an entire interest which accrues only at stated

periods can not be apportioned, because not susceptible of any
intermediate division. Interest was apportionable at common
law, because it was held to accrue *de die in diem*, and, there-
fore, to be susceptible of intermediate division. This is the
rule of the common law, and there is no statutory law of force
in this State which changes this rule in reference to dividends
declared upon stock in corporations.

It is not necessary to determine whether rent is apportion-
able in Georgia, as the contest here is not over rent, but over
dividends. In a case of this character, it matters not that the
source from which a corporation derives the fund upon which
it bases and from which it pays a dividend to its shareholders
may be rent, for the dividend which it pays to a shareholder
is not rent. The question is, whether what the stockholder re-
ceives from the corporation is apportionable or not. What
he receives comes not to him as rent, but as dividends. He
leases nothing, and he receives nothing as rent. Before the
money reaches his hands, it has been paid by the lessee to the
corporation in which he holds stock, has become a part of its
corporate assets, has ceased to be rent, and he has no claim
upon it until it has been segregated from such assets by the
declaration of a dividend. When a dividend has been de-
clared, a debt in his favor is created against the corporation,
and when he collects his dividend he is simply collecting this
debt, and not collecting rent which the corporation has received
from his tenant and pays over to him.

It is contended by the learned counsel for the executrix, that
the money received by each of these corporations and paid out
in dividends to its stockholders was "interest pure and simple
on the investment of the property, earned day by day, but pay-
able, in the one case quarterly, in the other semi-annually."
It seems very clear to us that the money which each of these
corporations receives upon a lease of its corporate property is
not interest. It certainly is not compensation received for the
loan or use of money. The mere fact, in the case of the South-
western Railroad Co., that the lease contract stipulates that the
lessee shall pay to the lessor, "during each and every year of
the continuance of the term of the lease, a sum equal to five

per centum upon the amount of the capital stock of the South-western Railroad," outstanding at the date of the lease, does not change what would otherwise be rent into interest. But it is immaterial whether what the corporation receives is interest or not, because the stockholder when he receives his money from the corporation is not receiving interest, but a dividend upon his stock.

Aside from the general common-law rule which we have been considering, there are principles applicable to the ownership of stock in incorporated companies which we think would control the decision in this case. The profits and surplus funds of a corporation, whensoever they may accrue, are, until separated from the capital by the declaration of a dividend, a part of the stock itself, and will pass with the stock, under that name, in a transfer or a bequest. Thomp. Corp. § 2173. So when one person transfers stock in a corporation to another, the transfer of the stock carries with it, as an incident to its ownership, all dividends thereafter declared, irrespective of when such dividends may have been earned (9 Am. & Eng. Enc. L. (2d ed.) 720, and cases cited), and without regard to the source from which the funds divided were acquired by the corporation. Jermain v. Lake Shore R. Co., 91 N. Y. 483; Richardson v. Richardson, 75 Me. 570. This results from the principle that a stockholder has no claim to a dividend until it is declared, and each share of stock represents a present interest in it, and that passes upon the transfer of the share. Thomp. Corp. § 2172. This general rule regulating the transfer of stock, giving the dividend to the holder of the stock at the time the dividend is declared, is ordinarily followed when a life-tenancy in shares of stock in a corporation expires between dividend days. 9 Am. & Eng. Enc. L. (2d ed.) 719. A shareholder in a corporation has no legal title to the property or profits of the corporation until a division is made or a dividend declared; until then the fund upon which the declaration of a dividend may be based and from which it may be paid is a part of the assets of the corporation and belongs, *in solido*, to the corporation, no shareholder having any title to any part of it. Jones v. Terre Haute & Richmond R. Co., 57 N. Y. 196;

Boardman v. Lake Shore R. Co. 84 N. Y. 157. When a cash dividend is declared out of net earnings, the money set apart for the payment of such dividend is segregated from the assets of the corporation, and belongs to those holding stock in the corporation at the time that the dividend is declared. The instant it is thus severed from the corporate property, it is necessarily severed from the stock and goes to those who were the owners of stock when the severance took place, but until the segregation is accomplished it is a part of the stock. Herein this case differs from one where a life-tenant is entitled to the income arising from a trust fund loaned out at interest. In the latter case the income is accruing from day to day; and as it belongs to the life-tenant, so much of it as is earned during his lifetime rightly belongs to him. In the present case, even if we admit, for the sake of the argument, that the income received by each of the corporations, in which the stock belonging to the trust estate was held, accrued from day to day, it would by no means follow that the income which the life-tenant received from this stock accrued from day to day. A dividend does not accrue to a stockholder little by little and from day to day; for the corporation in which he owns his shares owes him nothing until it declares a dividend, and when that event happens the whole dividend is due at once. The instant before a dividend is declared a corporation owes nothing to its stockholders; the instant after it is declared the whole dividend belongs to them. Therefore a person who owns stock in a corporation just prior to the declaration of a dividend, but from whose ownership it passes to that of another before the dividend is declared, unless there is something in the nature of a saving reservation as to such dividend, has no interest whatever in the dividend. We can not see that it makes any difference whether the transfer of ownership is occasioned by death or by contract; in either event, the moment the title to the stock is vested in the new owner, the latter acquires all the rights which appertain to the ownership of the stock, one of which is the right to receive all subsequently declared dividends. It seems to us that these principles must control this case. Upon the death of the life-tenant, the stock which he

held passed as effectually from his ownership to that of the remaindermen as it would have done if prior to his death he had owned the whole title and had sold the stock to these same persons. And as the stock represented its proportionate interest in all the assets of the corporation, and so carried with it the right to receive any dividends which might be declared in the future, the right to the whole of such dividends passed to and vested in the remaindermen.

The ruling in the case of *Meldrim* v. *Trustees of Trinity Church*, 100 *Ga.* 479, is in entire harmony with the one which we now make. There "a lessee railroad corporation, as a consideration for the lease, stipulated with the lessor corporation to declare and pay to the *stockholders* of the latter semi-annual dividends of not less than 7 per cent. per annum on the amount of their stock, but for several years failed to do so." It was held, that "these minimum dividends, upon being afterwards realized in part through a compromise between the lessor corporation and a successor of the lessee corporation, [belonged] in so far as realized to the persons to whom they ought to and would have been paid as they accrued if the contract had been complied with," upon the ground that "these dividends as to the minimum amount were not undeclared, but were predeclared by express contract between the two corporations." On page 484, Chief Justice Simmons, who delivered the opinion of the court, says: "The rule being that dividends belong to the owner of the stock at the time they are declared and made payable, and these dividends having been declared in advance by contract, they certainly belong to McIntire in so far as they were made payable up to the time of his death. Being part of his personal estate, his executors are entitled to recover them."

*Judgment affirmed. All the Justices concurring.*