# CASES IN CHANCERY

## DELAWARE

Mahlon Bryan and Henry C. Robinson, Trustees under the Last Will and Testament of James C. Aikin, deceased,

*vs.*

William Aikin, David Aikin, James Aikin, Elwood Potts Aikin, Edwin Palmer Aikin, Jennie Aikin, Anna Grier Porter, Robert J. Grier, Ellen Grier Buchanan, Eleanor Turner Grier and Harriet Elizabeth Grier, heirs at law of James C. Aikin, deceased.

*New Castle, April* 1, 1912.

A will, executed by a testator who died in 1884, devised certain corporate stock to trustees, to pay "the net income, interest, and dividends" to grandsons for life, with remainder over upon the death of the survivor. In 1910 the corporation declared a stock dividend out of the earnings accumulated prior to 1897. *Held,* that the will showed no intention to dispose of the stock dividends, leaving their disposition to the general rule of law applicable thereto.

A corporation has power to either distribute corporate earnings to stockholders, or withhold them for the purpose of extending the corporate business, and in the latter event may increase the capital stock by stock dividends; its power to deal with earnings not being subject to judicial control, in absence of bad faith.

A corporation cannot decrease its capital by distributing the same among the stockholders as dividends.

The increase in the value of corporate stock resulting from accumulations of earnings becomes a part of the corpus of the fund invested, and the increased value should be added to the corpus if the stock be sold, and the income on any other investments of the proceeds made be paid to the life tenant, leaving the principal as reinvested to go to the remaindermen.

Since the value of a stockholder's right to subscribe at par for new shares, salable for more than par, is an accretion to the capital, if a trustee of stock sells such right, the proceeds should be added to the principal and go to the remaindermen under the trust, and not to the life tenant.

Where shares of stock of a corporation are held by trustees as an investment of funds bequeathed in trust to pay the income and dividends to one for life, and then to pay the principal to others, and, as appears by its corporate action, the corporation had during the life tenancy used earnings to permanently increase the business plant of the company, and had increased its capital stock by issuing new shares to represent such increase in the plant, and distributes the new shares *pro rata* among its shareholders as a stock dividend, the new shares belong to the corpus of the fund as an accretion to the principal thereof, and do not belong to the life tenant.

Bill for Instructions to Trustees.    The bill was filed by Mahlon Bryan, et al., trustees under the will of James C. Aikin, deceased, for instructions as to the disposition of shares of stock of the Delaware Railroad Company issued to and received by the trustees as holders of certain shares of the stock of the company.    James C. Aikin died in July, 1884, and by the general residuary clause gave the residue of his estate to trustees, in trust, in substance that the testator's widow should receive the interest, dividends, rents and income of the trust estate for her life, and after her death to invest the personal estate and collect the dividends and interest thereon and pay over "the net income, interest and dividends" to two granddaughters of the testator for their lives, and to the survivor for her life, and upon the death of the survivor, then the trust estate should be transferred to other persons.    The testator's wife died in his lifetime.    Both granddaughters survived him and one died since he did and before the dividend in question was declared.    At present Anna Grier Porter, one of the defendants, is the life bene-

ficiary, and William Aikin and the other defendants are those entitled in remainder, so that all persons having an interest are parties to the cause.

On February 23, 1910, the trustees held as part of the trust estate sixty-three shares of the capital stock of the Delaware Railroad Company, and of these fourteen belonged to the testator at his death, and the remaining shares were purchased by the trustees, some at $31.75 per share and others at $35 per share. The par value of the shares is $25. The railroad of the Delaware Railroad Company from 1855 to February 24, 1910, was operated under a lease to another company. By this lease the lessee received the entire income from the leased property, paid therefrom for maintenance and repairs, taxes and insurance, and was allowed for hire of equipment furnished by the lessee, and the balance of income belonged to the lessee. Branches, extensions and improvements were to be built by the lessor, the lessee primarily providing money necessary for the purpose, to be repaid by the lessor. Cash dividends at about a uniform rate were paid to the stockholders semi-annually. The balance of income due the lessor under the old leases varied from year to year, but in the aggregate were sufficient to cover expenditures in purchase of real estate and substantial betterments and improvements of the railroad and appurtenances to the extent of about $2,100,000 in addition to the regular cash dividends, which were more than eight per cent. On February 21, 1910, the board of directors of the Delaware Railroad Company adopted the following preambles and resolution:

"Whereas, by resolution of this board, adopted January 13, 1910, it was declared in the judgment of the board proper and advisable that an additional increase should be made in this company's capital stock to the extent of 83,642 2/5 shares of the par value of $25 per share, aggregating $2,091,060, for the purpose of its issuance and distribution at par as a stock dividend to and among the holders of this company's capital stock, according to their respective holdings, for and on account of expenditures and appropriations out of the company's surplus earnings from and including the year 1897, to and including the year 1909, made for and in the purchase of additional real estate and substantial betterments and improvements to the company's railroads and appurtenances, costing,

in the aggregate, $2,100,000; and by the said resolution the question of such increase of capital stock and the issuance and distribution thereof as a stock dividend as aforesaid were directed to be submitted to the company's shareholders for consideration and appropriate action at a special meeting called for that purpose, to be held on the 15th day of February, 1910;

"And whereas, the said question was submitted to, and considered by, the stockholders at the said special meeting, and the said increase of capital stock and the issuance and distribution thereof as a stock dividend to and among the company's stockholders were duly consented to, authorized and approved; Therefore

"Resolved, that an extra dividend out of this company's net earnings accruing prior to November 1, 1909, of 20 per centum in cash and 70 per centum in capital stock be and the same is hereby declared to and among this company's stockholders, according to their respective holdings, as they shall stand registered at the close of business on the 23d day of February, 1910, the same to be payable on and after the 28th day of February, 1910; and an actual increase in the company's capital stock to the extent of 83,642 2/5 shares, aggregating at their par value $2,091,060, and the issuance and distribution thereof for and on account of the stock dividend hereby declared, be and the same are hereby authorized, and the proper officers of the company are hereby expressly empowered and directed to take all such steps and proceedings as shall be necessary and proper to effectuate this resolution."

By this it appears that the twenty per cent. cash dividend and the seventy per cent. stock dividend were both declared out of net earnings subsequent to 1897. It was further averred that the market value of the shares after the increase of the capital stock was not decreased from the prices obtainable therefor before the capital stock was increased, and is substantially greater than the prices paid therefor by the testator or the trustees. Also that hereafter the market value of the shares will probably vary from time to time only with the current rate of interest, which assertion is based evidently on the fixity of the income receivable by the stockholders as a cash dividend. From these data it was asserted by counsel that the declaration of the dividends in question, either cash or stock, did not operate to diminish the principal of the trust fund.

The answers admit the facts alleged in the bill, and the cause was heard on bill and answers, at the election of the complainant.

*Herbert H. Ward*, for the life tenant, contended in substance, as follows:

What theory, principle or rule of practice shall be adopted by courts of equity in this State in determining as between a life tenant entitled to the income, interest and dividends of capital stock, constituting a portion of an estate held in trust, and remaindermen entitled to the principal of the trust estate, as to who shall be entitled to a dividend, whether of cash or stock, declared out of net earnings accumulated during a term of years and used by the company during such term of years in the purchase of additional real estate and substantial betterments and improvements to the company's railroads and appurtenances, and when it affirmatively appears that neither the principal of the trust estate, nor the future income thereon, so far as the shares held as principal are concerned, have been diminished by reason of such stock or cash dividends and when such net earnings have all, or substantially all, accumulated since the time when the trust estate acquired the stock in question? So far as counsel for the life tenant has been able to ascertain, this question is a new one in the State of Delaware. The question of the application of stock dividends as between a life tenant entitled to interest, income and dividends, and remaindermen entitled to the principal of the fund, has an interesting history. The original English rule established by English Chancellors was that all of the dividends approximating the usual interest or income from money invested went to the life tenant, and all extraordinary dividends became a part of the principal fund. This was a simple rule, but was so unjust that English Chancellors were driven from it. Since this original rule was departed from, the contest has raged around different points, and practically every shade of opinion has been expressed by courts of equity and distinctions innumerable have been set up by such courts in an endeavor to arrive at some rule or practice which would be consistent with equity and be just to the conflicting interest of the life tenant and remaindermen. In some courts, as for instance in the English courts, stress has been laid upon the action of the corporation and the treatment by it of accumulated earnings and upon the

Argument.

phraseology of the various resolutions leading up to the declaration of dividends. In other courts, as in the State of Massachusetts, a rule has been adopted by which all stock dividends have been considered a part of the principal and all cash dividends have been awarded to the life tenant; but the Massachusetts courts themselves have in repeated instances found that such a general rule was impossible to be adhered to, and on some occasions have declared dividends, though in money, to be a part of the principal, and on other occasions have declared stock dividends to be income. It may be said that the so called Massachusetts rule has actually broken down in practice.

In Pennsylvania the central idea has been adopted that all net earnings when declared as dividends, whether in stock or in cash, belong to the life tenant, provided that such earnings have been made or have accumulated since the stock in question was acquired by the trust estate. Under this rule earnings made or accumulated prior to the acquisition of the stock by the trust estate become a part of the principal of the trust fund and all earnings when declared as dividends, made or accumulated since the acquisition of the stock by the trust estate, go to the life tenant. This rule is a troublesome one, inasmuch as it involves an inquiry into the business and books of the company whose stock is so held in trust, and a determination by the court of the earnings made or accumulated prior to the acquisition of the stock by the trust estate and the earnings made or accumulated since such acquisition of the stock.

It may be said generally that the tendency of the entire range of discussion of the question since the departure from the ancient rule of the English Chancellors above referred to, has been to secure to the life tenant the benefits of all corporate earnings made by a company whose stock is held in trust, when such dividends are declared out of the net earnings of the company during the life of the life tenant, whether such dividends are made in cash or capital stock, and to give to the remaindermen the benefit of all such earnings, accumulated through whatsoever period they may have been made and earned, if they should not be declared as dividends out of net earnings until

after the life estate ended.  This tendency has resulted in what may be termed the modern American rule, adopted by a great majority of the American state courts which have passed upon the question as a new question in such states in recent years.  This modern American rule is that all net earnings, howsoever they may have been treated or used by the corporation during their accumulation and regardless of the period during which they have accumulated, if declared as dividends out of net profits during the life tenancy, are given to the life tenant, whether such dividends are made in cash or capital stock, provided that the principal of the trust fund is not diminished thereby.

Thus at length, after many trials and tribulations of courts, a rule has been evolved which is practicable, substantially as simple as the ancient rule of the English equity law and doing complete justice as between the life tenant and remaindermen.  It is this modern American rule which the life tenant in this case will urge upon the attention of and the adoption by this court.

*Benjamin Nields and Willard Saulsbury*, for tenants in remainder, contended for the rule of the House of Lords, the Supreme Court of the United States, Massachusetts, and other states, based on the power of the corporation over its earnings and the inconvenience of investigations of the books and records of corporations to ascertain the times when earnings were made and uses to which they were put by the company.

THE CHANCELLOR.  The bill in this case was filed by testamentary trustees seeking instructions whether shares of stock distributed by the Delaware Railroad Company, under the circumstances set forth in the statement of the case, belong to the life tenant or are to be held by the trustees as part of the corpus of the estate.  Certain facts are established respecting the new shares: (1) They were part of an increased issue of shares of capital stock described as representing (and in fact representing) earnings of the company which had theretofore been expended by the company in permanently increasing the

plant of the company, its railroad; (2) the earnings which had been so expended were earned and so expended during certain stated years, which period was since the death of the testator; (3) the market value of the old shares has not been and will not be materially affected by the issuance of the new shares and are in fact salable on the market for more money than they cost either the testator or the trustees. The question as to the dispostion of these shares of stock is distinctly raised in this case in the courts of Delaware for the first time, and this court is, therefore, untrammeled in deciding the case by any precedent here.

There is no testamentary guide. By the will of James C. Aikin the trustees are directed to pay to the life tenant the net income, interest and dividends on the trust fund, and this language does not indicate the intention of the testator as to the point disputed. Even the use of the word "dividends" does not, according to all the cases, indicate such intention. Besides, though part of the shares held by the trustees were those held by the testator in his life, there was no express reference to them or gift of them in specie in trust, and the events which made the distribution possible occurred so long after his death that it could not reasonably be claimed that it was contemplated by him or provided for in his will.

Among all the contrariety of views relating to the disposition by the corporation of its earnings certain principles are considered to be established. It is within the power of the corporation to distribute or withhold earnings from the stockholders; to use them to extend, improve and increase the plant and material business facilities; and having so made them part of the physical assets of the company to permanently capitalize them by increasing the capital stock and issuing to the shareholders new shares to represent the accumulations. Within the limits of good faith, the power of the company to so deal with the earnings of the company is not subject to judicial control. A corporation cannot lawfully distribute among its stockholders any portion of its capital as dividends, or otherwise decrease its capital. Dividends must be from the earnings or profits. The respective rights of life tenants and remaindermen in the

extraordinary and unusual distributions made by a corporation have puzzled the courts for many years, and several more or less well defined rules have been evolved. These rules depend on whether the distribution is of earnings or capital, and some on the character of the distribution even when made from earnings. In any event and in every case the court must base its conclusions on whether the fund distributed represents earnings, past or current, or a reduction or change of capital from the form in which it existed originally, or represents the enhanced value of the capital caused otherwise than by an accumulation of earnings, for it seems to be settled, that whatever may be the rule respecting the division of earnings, the dividends (so called) from other things belong to capital. When a distribution to stockholders represents a reduction in capital in dissolution, or otherwise, or a mere enhancement of the value of its capital assets, due to unusual conditions of a commercial or economic character, or due to other causes than the accumulation of earnings of the company, there is not much disagreement as to the disposition thereof, and in general such distributions, in whatever form made, belong to the corpus or principal and not income. So also it is agreed that such examination will be made of the action of the company as is necessary to ascertain whether the distribution is of earnings or represents that which has been received from other sources, and if of earnings, whether they were in fact turned into capital.

In this case the declaration of the resolutions of the company are clear as to the sources from which the distribution was made, and the period within which acquired, as well as the use made thereof. The increase in the value of shares of stock resulting from the accumulations of earnings is clearly part of the corpus of a fund, and if the stock be sold the increase of value is to be added to the fund, the life tenant thereafter receiving the income to be received on other investments to be made thereof and the principal being preserved for the tenant in remainder. *Stewart v. Phelps*, 71 *App. Div.* 91, 75 *N. Y. Supp.* 526; *Connolly's Estate*, 198 *Pa. St.* 137, 47 *Atl.* 1125.

So too, it is settled elsewhere, and it has been held by this

court, that the value of the right to subscribe at par for new shares of stock which are salable on the market for more than par is an accretion to capital and does not go to the life tenant as income. If, therefore, the trustee sells the right to subscribe for the new shares, (which rights are usually represented by certificates called "warrants,") the money so realized should be added to the principal. *Perry on Trusts*, § 544; *Boardman v. Mansfield*, 79 *Conn.* 634, 66 *Atl.* 169, 12 *L. R. A.* (*N. S.*) 793.

There is an irreconcilable conflict between the decisions on the point distinctly raised in the cause at bar and the principles upon which they are based are equally variant. To indicate the variety of views it is only necessary to state that the shares in question would be awarded to the life tenant (a) in Pennsylvania, New Jersey and New Hampshire, because it appears that the distribution was of earnings all of which were made since the death of the testator; (b) also in New York and Kentucky, not because they were earnings made since the death of the testator, but because at the time of the distribution the life tenant was entitled to all the fruits of the ownership of the stock, irrespective of the form in which it was distributed and of the period during which the thing distributed was earned; but the shares would be awarded to the remainderman by the courts in England, Massachusetts, Connecticut, Illinois, Rhode Island and Virginia and in cases in the United States Supreme Court, because though they represented earnings made since the death of the testator they had in fact been capitalized by the company by being used to increase the plant of the company and were part of the new shares distributed to stockholders to represent the new capital.

By the Massachusetts and English rule, the character of the dividend, i. e. whether stock or cash, is the criterion and the former goes to the corpus and the latter to income, without inquiring in either case as to the period covered by the accumulations of earnings from which the fund is obtained, i. e. whether the earnings were wholly before or wholly after the commencement of the life estate, or partly before and partly thereafter.

By the Pennsylvania rule, the character of the dividend is unimportant, but the period when the earnings were made is controlling.   If the earnings were accumulated before the life estate began, then in the division thereof the dividend goes as capital to the corpus, and if earned wholly after the life estate began, then the dividend goes to the life tenant, and this irrespective of the form of the dividend, i. e. whether in stock or money.   If earned in part before and in part after the beginning of the life estate, it is apportioned between the corpus and income after an investigation of the books and affairs of the corporation to ascertain the necessary facts.

By the New York and Kentucky rule, the character of the dividend, i. e. whether cash or stock, is not the criterion, nor is it considered important as to when the thing distributed was earned, and no apportionment is made of it.   Whoever is entitled to the fruits of the stock at the time the dividend is declared is entitled to every distribution, whatever its form or whenever earned.

With the authorities so evenly matched and the reasons for each rule being so plausible, this court must decide the question according as the reasons seem sound.   In such matters the rule should be fair to both present and future interests, be clear, easily applied and logical.   A full discussion of the different rules and of the authorities supporting them will not be attempted, for it has been frequently done by able judges in other reported cases available to the student, and little, if anything, can be added to the discussion of the subject.

The rule adopted in this court is that which has the unqualified support of the House of Lords and the courts in England, the Supreme Court of the United States, the courts of Massachusetts, Connecticut, Rhode Island and Illinois, and probably of Maine and Virginia, and the dicta of the judges of the courts of other states.   This is based on the undoubted power of the company to turn earnings or profits permanently into material, physical additions to its plant, and thus to withhold the earnings from the shareholders.   The result of this accumulation of property used in its business is to increase the value of that which represents the collective ownership of

the assets of the company, its capital stock held by its share-holders. This increase of value is part of the corpus. Whether the shares of stock increased in market value or not, the plant (in this case the railroad and its facilities for providing trans-portation) is increased by physical additions and improvments. This increase of property the company, acting with its un-doubted and uncontrollable power, has declared to be capital and has issued to each shareholder an evidence of his interest therein by giving him shares of stock, the amount given to each being proportionate to his prior holdings. As Mora-wetz, in his work on Private Corporations, says:

"The effect of a stock dividend is to capitalize the accumulated pro-fits permanently. The profits on account of which a stock dividend is declared can never afterwards be distributed among the shareholders as dividends, and after the new shares have been issued, the right of the cor-poration to pay further dividends and the right of the shareholders to demand them, must be considered with reference to the increased nomi-nal capital."

As between the corporation and its shareholders, unde-niably a stock dividend is capital. It is also true that the proportions of the holdings of shareholders are not changed by a real stock dividend.

"A stock dividend does not distribute property, but simply dilutes the shares as they existed before." *Williams v. Western Union Tel. Co.,* 93 *N. Y.* 189.

"His (i. e. a stockholder's) holding after the new issue bears precise-ly the same ratio to the total of the outstanding shares of the corporation as did his previous holding to the previous total." *Green v. Bissell,* 79 *Conn.,* 547, 65 *Atl.* 1056, 9 *L. R. A.* (*N. S.*) 1011.

"A stock dividend really takes nothing from the property of the cor-poration and adds nothing to the interests of the shareholders. Its prop-erty is not diminished and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are rep-resented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares to-gether representing the same proportional interest that the original shares represented before the issue of new ones." *Gibbons v. Mahon,* 136 *U. S.* 549, 559. See, also *Mann v. Anderson,* 106 *Ga.* 818, 32 *S. E.* 870.

It is also a characteristic of such a distribution that nothing passes out of the dominion of the company to the stockholders.   In *Boardman v. Mansfield*, 79 *Conn.* 634, 66 *Atl.* 169, 12 *L. R. A.* (*N. S.*) 793, this characteristic is thus aptly explained:

"That principle is, that until there has been some action by a corporation setting apart from the body of its assets some portion of them to become the property of its stockholders, and thus to pass out of the dominion of the corporation into that of the stockholders, there is nothing in existence to which the right of the latter can attach otherwise than as it attaches to the corporate interests as a whole—nothing which can as to them be regarded as partaking of the nature of profits from the corporate investment."

Mr. Justice Gray, of the Supreme Court of the United States, in *Gibbons v. Mahon*, 136 *U. S.* 549, 569, quoted as follows from the language of the court below:

"A dividend is something with which the corporation parts; but it parted with nothing in issuing this new stock.   It simply gave a new evidence of ownership which already existed."

"The simple question in every case is whether the distribution made by the company is of money to be spent as income, or is of capital to be held as an investment in the corporation."   *D'Ooge v. Leeds*, 176 *Mass.* 558, 560, 57 *N. E.* 1025.

In lucidly explaining the rule respecting the distribution of a real stock dividend, the court in Connecticut said in *Green v. Bissell*, 79 *Conn.* 547, 551, 65 *Atl.* 1056, 8 *L. R. A.* (*N. S.*) 1011:

"The declaration of a stock dividend involves the creation and issue of new shares of stock.   The basis of the issue, in so far as payment into the corporation is not required of the recipient, is surplus assets, which thus become converted into strict capital with all which that implies. From the process there results an increase of both the number of outstanding shares and the amount of the corporate assets which have had that peculiar dedication to the corporate uses which entitles them to the name of capital, strictly speaking. *Smith vs. Dana*, 77 *Conn.* 543, 552, 60 *Atl.* 117.   It is also one of the incidents of a stock dividend, that the stockholder who receives his *pro rata* proportion of the new issue, while he acquires the ownership of more shares adds nothing to his proportionate ownership of the assets of the corporation.   His holding, after the new issue bears precisely the same ratio to the total of the outstand-

ing shares of the corporation as did his previous holding to the previous total. *Terry v. Eagle Lock Co.*, 47 *Conn.* 141, 165."

If the power of the corporation over its assets is uncontrolled so that it may and does turn earnings into capital, and if the corporation having capitalized earnings distributed them not as earnings but as capital, then logically the thing distributed belongs to the person who is entitled to capital or principal, viz., the remainderman. This is clearly stated by Vice Chancellor Stevens in the latest case in New Jersey, *Ballantine v. Young*, 79 *N. J. Eq.* 70, 74, 81 *Atl.* 119:

"As a matter of logic it is difficult to resist the reasoning leading to the conclusion that stock dividends are in fact principal; for the life tenant as is universally held, is not, in the absence of fraud, or improper conduct, entitled to the earnings until they are distributed. They are not, in fact, distributed, but, on the contrary, put permanently into capital account where new stock is without any money equivalent allotted to the whole body of the stockholders."

The rule here adopted was approved and used in the following cases, where, as here, earnings or profits had been used by the company to increase the plant of the corporation and had subsequently increased its capital stock and issue to its shareholders new shares representing earnings so capitalized. In England: In the case of *In re Barton's Trust, L. R. 5 Eq. Cas.* 237, the company engaged in transportation by ships, used part of its earnings to buy new boats and new shares were issued to the shareholders to represent the money so used and the new shares were held to be capital. Said Vice Chancellor Wood: "When the company * * * has said that they would not divide this money [i. e. the earnings of the previous half year] but turn it into capital, capital it must be from that time." This case, and the principle stated in it, were expressly recognized and approved by the House of Lords in *Bouche v. Sproul, L. R. 12 App. Cas.* 285 (1857), and the rule has never since been questioned there. Massachusetts: The case of *Minot v. Paine*, 99 *Mass.* 108, announced the rule in its broadest and simplest form, thus: "A simple rule is to regard cash dividends however large as income, and stock dividends

however made as capital." But in this bald form the rule is too comprehensive and has not been followed, even in Massachusetts, for even there the court very properly inquires as to the circumstances under which the distribution was made, in order to ascertain whether there has in fact been a capitalization of earnings. In all the many subsequent cases in Massachusetts, capitalized earnings distributed in the form of shares of stock have been held to be capital, and in this the decisions of the courts of Massachusetts are consistent. United States Supreme Court: *Gibbons v. Mahon*, 136 *U. S.* 549; Connecticut: *Spooner v. Phillips*, 62 *Conn.* 62, 24 *Atl.* 524, 16 *L. R: A.* 461; *Boardman v. Mansfield*, 79 *Conn.* 634, 66 *Atl.* 169, 12 *L. R. A.* (*N. S.*) 793; *Bishop v. Bishop*, 81 *Conn.* 509, 71 *Atl.* 583. Rhode Island: *Petition of Brown*, 14 *R. I.* 371. Illinois: *De Koven v. Alsop*, 205 *Ill.* 309, 68 *N. E.* 930, 63 *L. R. A.* 587; *Blinn v. Gillett*, 208 *Ill.* 473, 70 *N. E.* 704; *Billings v. Warren*, 216 *Ill.* 281, 74 *N. E.* 1050. Virginia: *Kaufman v. Charlottesville, etc., Co.*, 93 *Va.* 673, 25 *S. E.* 1003 (1896), where the Supreme Court of Virginia followed the reasoning of *Gibbons v. Mahon*. Also probably in Maine: *Richardson v. Richardson*, 75 *Me.* 570, *Gilkey v. Paine*, 80 *Me.* 319, 14 *Atl.* 205, though in the latter case the court said:

"The effort in this country has been generally to maintain the integrity of the capital and give all surplus earnings, in whatever form distributed, to the life tenant. And perhaps no better rule than this can be adopted."

Opposed to this rule are the decisions in Tennessee: *Pritchitt v. Nashville Trust Co.*, 96 *Tenn.* 472, 36 *S. W.* 1064, 33 *L. R. A.* 856. Kentucky: *Hite v. Hite*, 93 *Ky.* 257, 20 *S. W.* 778, 19 *L. R. A.* 173. The last two cases are especially valuable to the student of the question, for they are able opinions and were decided by courts unembarrassed by prior decisions of their respective states, and were rendered after the decision of the United States Supreme Court in the strong case of *Gibbons v. Mahon*. Pennsylvania: *Earp's Appeal*, 28 *Pa. St.* 368 (1857), the authority of which has not since been shaken and which established the rule of apportionment. New Hamp-

shire: *Holbrook v. Holbrook*, 74 *N. H.* 201, 66 *Atl.* 124, 12 *L. R. A.* (*N. S.*) 768.　New York: *McLouth v. Hunt*, 154 *N. Y.* 179, 48 *N. E.* 548, 39 *L. R. A.* 230.　New Jersey (probably): *Van Doren v. Olden*, 19 *N. J. Eq.* 176, which followed *Earp's Appeal* and favored apportionment; *Ashhurst v. Field*, 26 *N. J. Eq.* 1, affirmed without discussion in 29 *N. J. Eq.* 625.　But in neither of the cases in New Jersey had the exact point here raised been considered, so that when it did arise there squarely, in *Ballantine v. Young*, 79 *N. J. Eq.* 70, 81 *Atl.* 119 (1911), Vice Chancellor Stevens said logic favored the application of the rule of the United States Supreme Court, though he felt controlled by *Ashhurst v. Field*, the decision of the higher court.　His remark on the subject is quoted elsewhere in this opinion.

　　The decisions in Maryland are inconclusive, for in *Thomas v. Gregg*, 78 *Md.* 545, 28 *Atl.* 565, the court seemed to consider it important to ascertain whether a stock dividend represented earnings and whether the company intended to make the earnings part of the capital, "or merely to be used temporarily with the intention on the part of the directors of refunding them to the shareholders as income."　This would imply that if earnings had actually been turned into capital, then a dividend of stock representing them would be capital also.　But as a fact, though the corporation had in fact so treated earnings, the court held that the earnings had been declared as income and gave the stock dividend to the life tenant.　The courts of Iowa, if *Kalbach v. Clark*, 133 *Iowa* 215, 110 *N. W.* 599, be followed, will agree with Tennessee and Kentucky.　In Minnesota the court in *Goodwin v. McGaughey*, 108 *Minn.* 248, 122 *N. W.* 6, followed the Pennsylvania rule.　The majority of the writers on the subject in text-books take a view different from the rule here adopted, but no attempt will be made to review them, or to further review, or even mention, the many other cases on the subject.

　　The rule here adopted has merit, not only as being concededly simple and direct, but represents a logical conclusion from established premises.　It gives weight to the action of the company, because the corporation has the power to settle

the premises upon which the question is to be decided. It avoids an investigation into the transactions of the company to determine the period within which the earnings were made, and on numerous occasions it has been pointed out by courts which have rejected the apportionment rule of Pennsylvania that this is always troublesome, usually expensive, seldom satisfactory and sometimes practically impossible, as in the case of a foreign corporation. Of course these references to some of the difficulties of adopting a rule as to apportionment, according as the earnings were made in whole or part during the life of the testator, or wholly or partly thereafter, do not apply in the case at bar, because it affirmatively appears that all the earnings represented by the stock dividend in question were made since the life tenancy began. Still a plain, simple rule is sought, and one that is workable in all cases to prevent controversies and to guide in the administration of other estates respecting other distributions of capitalized earnings. The rule has been criticised because it gives too much weight to the action of the corporation, but this is a necessary result of the character of the investment and of the necessary power of the corporation respecting the management of the assets of the company. The rule here adopted is clear, easily applied and logical and as fair to present interests as the nature of the case will permit, in view of the corporate control of corporate property.

It follows, from what has been said, that the peculiar feature of the case at bar, viz., the maintenance of the market value of the shares of stock, notwithstanding the increase in the value of the shares, is an unimportant one and has no bearing on the case. The conclusions here reached are applicable only to a state of facts similar, or substantially similar, to those in the case argued, which may be thus concisely stated:

Where shares of stock of a corporation are held by trustees as an investment of funds bequeathed in trust to pay the income and dividends to one for life, and then to pay the principal to others, and, as appears by its corporate action, the corporation had during the life tenancy used earnings to permanently increase the business plant of the company, and had increased its capital stock by issuing new shares to represent

2

18 Merchants Union Trust Co. *vs.* New Phila. Graphite Co.

Title.

such increase in the plant, and distributes the new shares *pro rata* among its shareholders as a stock dividend, the new shares belong to the corpus of the fund as an accretion to the principal thereof, and do not belong to the life tenant.

Therefore the trustees will be instructed to hold the new shares of the stock of the Delaware Railroad Company as an investment of part of the principal of the trust estate, the dividends thereon to accrue in the future to be treated in the same way as the dividends on the old shares were dealt with.

Let a decree be entered accordingly. *

*Note.* On appeal the decree of the Chancellor was reversed by the Supreme Court. See post p 446.